## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

MARY McDONALD,                               )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )          Case No.  14-1020-GEB
                                             )
CITY OF WICHITA, KANSAS and                  )
GARY REBENSTORF,                             )
                                             )
                    Defendants.              )
_____ )

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the Motions for Reconsideration filed by Defendants City of Wichita, Kansas and Gary Rebenstorf (ECF No. 113) and the lawyers and law firm formerly representing Defendants, Derek Casey and Amy Cline of Triplett, Woolf & Garretson, LLC (ECF No.  112) (collectively referred to as "Movants"). Movants seek reconsideration of the Court's January 26, 2016 Memorandum and Order (ECF No. 110) granting Plaintiff's Motion to Disqualify the Law Firm of Triplett, Woolf, and Garretson (ECF No. 98) from its representation of Defendants.  In the event the Court denies the Motions for Reconsideration, Movants ask the Court to make the findings necessary for an interlocutory appeal, pursuant to 28 U.S.C. §1292(b).  After consideration of Movants' motions, Movants' Sealed Memorandum in Support (ECF No. 116), Plaintiff's Response in Opposition (ECF No. 117), and Movants' Reply (ECF No.

---

[1] The exercise of jurisdiction by the undersigned U.S. Magistrate Judge over the trial of this matter is invoked under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (see Consent, ECF No. 90).

118), the Court enters the following orders.

## I.      Summary of the January 26, 2016 Order (ECF No. 110)

After Plaintiff sought disqualification of Defendants' counsel, Amy Cline, and the law firm of Triplett, Woolf and Garretson (ECF No. 98), the Court conducted a hearing on Plaintiff's motion.   During the hearing, and without objection from either defendant, Plaintiff proceeded by proffer regarding the substance of the motion and offered the court *in camera* review of the personal file kept by Plaintiff regarding her former lawyer-client relationship with Ms. Cline. Defendants also proceeded by proffer and referred to the earlier declaration prepared by Ms. Cline (ECF No. 103, Ex. B) regarding her former representation of Plaintiff.

Following the hearing, the Court—taking into consideration the motion briefing filed in this case, arguments of counsel, the declaration of Ms. Cline, and the case of *State v. Campbell*[2]—issued its January 26, 2016 Memorandum and Order granting Plaintiff's Motion (ECF No. 110).   The Court first dealt briefly with Kansas Rule of Professional Conduct ("KRPC") 1.6, explaining the fundamental principle of confidentiality in a client-lawyer relationship.   (ECF No. 110, at 6.)   Next, the Court found the three elements of disqualification under KRPC 1.9 were met:   1) a previous attorney-client relationship existed between plaintiff Mary McDonald and Ms. Cline; 2) the interests of Plaintiff and Ms. Cline in this action are clearly adverse; and 3) the present litigation involves a matter that is substantially related to the subject of the prior representation.   (ECF No. 110, at 8-

---

[2] 23 P.3d 176 (Kan. App. 2001).   *See* Mem. and Order (ECF No. 110, at 2) for discussion of the *Campbell* matter.

12.)

Upon disqualifying Ms. Cline, the Court then analyzed KRPC 1.10 to determine whether Ms. Cline's disqualification must be imputed to the law firm of Triplett, Woolf and Garretson.   Finding a presumption arose that Ms. Cline shared information with her current law partners, the law firm was also disqualified.  (ECF No. 110, at 12.)

## II.    Motions for Reconsideration (ECF Nos. 113, 114)

On January 29, 2016, Movants requested permission from the Court to file a motion for reconsideration on behalf of Defendants, given the recent disqualification of the law firm of Triplett Woolf.   On the belief that each has standing to seek reconsideration of an order which directly affects them,[3] the Court granted the request. Thereafter, Ms. Cline and Mr. Derek Casey, individually and on behalf of the firm, timely filed their motion (ECF No. 112).  The defendants City of Wichita, through its in-house legal counsel, and Gary Rebenstorf, acting pro se, joined their request (ECF No. 113).  The applicable legal standards and the arguments of the parties will be discussed in turn.

### A.    Legal Standard for Reconsideration

Although the Federal Rules of Civil Procedure do not address motions for reconsideration,[4] the standard is well-established.   Under D. Kan. Rule 7.3(b), a party

---

[3] *See Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cty., OK., Bd. of Educ.*, 230 F.3d 1201, 1207-08 (10th Cir. 2000), and *Hammond v. City of Junction City, Kan.*, 168 F. Supp. 2d 1241, 1243-44 (D. Kan. 2001).

[4] *See Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, No. 12-1008-JTM, 2013 WL 257074, at *1 (D.

may seek reconsideration of a non-dispositive order within fourteen days of the order, based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. Reconsideration is

> only appropriate where the Court has obviously misapprehended a party's position, the facts or applicable law, or where the party produces new evidence that it could not have obtained earlier through the exercise of due diligence. . . .[5] A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider.[6] Whether to grant a motion to reconsider is left to the Court's discretion.[7]

Movants contend the Court must reconsider its ruling under D. Kan. Rule 7.3(b)(2) and (3) due to discovery of new evidence and to right the Court's alleged wrong in bypassing its obligation to determine whether a substantial relationship exists between Ms. Cline's prior representation of Plaintiff and in this case where Ms. Cline represents Defendants. Each basis for reconsideration is addressed below.

## B.    Analysis

### 1.    Substantial Relationship

Movants first argue the Court, in clear error, bypassed its duty to determine whether Ms. Cline's prior representation of Plaintiff was *substantially related* to the

---

Kan. Jan. 23, 2013) (citing *Warren v. Am. Bankers Ins.,* 507 F.3d 1239, 1243 (10th Cir.2007)).

[5] *Tomelleri v. MEDL Mobile, Inc.*, No. 14-2113-JAR, 2015 WL 5098248, at *1 (D. Kan. Aug. 31, 2015) (citing *Turner v. Nat'l Council of State Bds. of Nursing, Inc.,* No. 11–2059–KHV, 2013 WL 139750, at *1–2 (D. Kan. Jan. 10, 2013); *Comeau v. Rupp,* 810 F. Supp. 1172, 1174–75 (D. Kan.1992)).

[6] *Id.* (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.,* 370 F. Supp. 2d 1130, 1132 (D. Kan.2005)).

[7] *Id.* (citing *Hancock v. Okla. City,* 857 F.2d 1394, 1395 (10th Cir.1988); *Shannon v. Pac. Rail Servs.,* 70 F. Supp. 2d 1243, 1251 (D. Kan.1999) (internal citation omitted)).

present matter.  They claim the Court erred by reversing its inquiry to first focus on whether relevant confidences were disclosed, rather than initially determining whether the two representations were factually related.  Movants rely upon the case of *Koch v. Koch Indus.*[8] to assert the fact that Plaintiff may have shared confidences with Ms. Cline related to the present litigation is immaterial.  Within that context, Movants argue the primary inquiry must be whether the two representations are substantially related in their factual contexts, and the Court skipped over the analysis of the *nature* of the information exchanged in the prior representation to focus only on *whether* the information was exchanged.

But Movants ignore the steps set forth in the *Koch* case which discuss how the Court is to accomplish the determination of a subject-matter relationship:

> [T]he court must be able to reconstruct the attorney's representation of the former client, to *infer what confidential information could have been imparted in that representation*, and to decide whether that information has any relevance to the attorney's representation of the current client.[9]

As in *Koch*, this is exactly what the Court did in its disqualification order:  inferred the *nature* of the information exchanged in the prior case related to, among other things, Plaintiff's credibility as a lawyer and prosecutor, and her duties as a lawyer and prosecutor, and then compared that information to the current case to determine whether the two representations were substantially related in their factual contexts.

Although Movants also argue Plaintiff failed in her burden to provide specific

---

[8] *Koch v. Koch Indus.*, 798 F. Supp. 1525 (D. Kan. 1992).
[9] *Id*. at 1536 (internal citations omitted).

evidence of the nature of the previous representation,[10] the Court dismisses that argument on, at the very minimum, two bases.  First, the nature of the prior relationship was abundantly clear from the subject matter of the *Campbell* case and counsel's statements at hearing.  Second, Movants ignore clear law permitting the Court to reasonably *infer* what confidential information of a factual nature could have been imparted.[11]

In addition, weighing heavily here is the Court's underlying concern about even the *appearance of possibility*[12] Ms. Cline received confidential information during the prior representation which would be relevant to this matter.  Of vital importance is the principle that Plaintiff bears a reasonable expectation of loyalty from Ms. Cline as her former counsel, regardless of Ms. Cline's current lack of memory regarding the details of the prior representation.  Suffice it to say, just because Ms. Cline declares not to remember confidential information exchanged by Ms. McDonald in the prior representation does not mean she did not receive any confidential information relevant to this case.  The Court's brief review of KRPC 1.6 in the prior order highlighted this expectation, although the same expectation is present in KRPC 1.9 and has been discussed in prior case law.[13]

Although the term "substantially related" has become somewhat of a term of art, a

---

[10] *See* discussion *infra* Part B.2.

[11] *Koch,* 796 F. Supp. at 1536.

[12] *Chrispens v. Coastal Ref. & Mktg., Inc.*, 897 P.2d 104, 112 (Kan. 1995) (citing *Koch*, 796 F. Supp. at 1536, and *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980)) (other internal citations omitted).

[13] *See Koch*, 796 F. Supp. at 1532 (internal citations omitted) (discussing the expectation of loyalty, and that Rule 1.9(a) "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys").

majority of courts, including the Tenth Circuit Court of Appeals, have found "substantiality is present if the factual contexts of the [prior and present] representations are *similar or related*."[14]   Also, the representations are substantially related "if they involve the same client and matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct."[15]   First of all, this Court can draw global and substantial similarities as to Ms. Cline, Ms. McDonald and both cases. Ms. Cline's prior representation of Ms. McDonald involved <u>direct representation</u> and not one of a cursory nature where Ms. Cline only happened to be an associate of the firm representing Ms. McDonald at that time.   Likewise, in this case Ms. Cline <u>directly</u> represents a party, and does not simply happen to be a member of the firm who is defending a matter involving Ms. McDonald.

Furthermore, the factual contexts of both matters are, at the very least, similar. Ms. Cline's prior representation of Plaintiff in the disciplinary matter involved Plaintiff's conduct *and* career as a lawyer and prosecutor.   While the exact allegations in the prior disciplinary case against Ms. McDonald do not mirror the claims presented in this employment case, both sets of factual information bear on Ms. McDonald's credibility in her employment as a lawyer and as a prosecutor.   These parallels are sufficient to not only qualify as "substantially related" for purposes of Rule 1.9(a), they also share such likeness as to potentially compromise public confidence in the judicial system should Ms.

---

[14] *Koch*, 796 F. Supp. at 1533 (emphasis added) (citing *Smith v. Whatcott*, 757  F. 2d 1098 (10th Cir. 1985) (internal citations omitted); *see also Chrispens*, 897 P.2d at 112 (citing *Graham v. Wyeth Laboratories,* 906 F.2d 1419, 1422 (10th Cir. 1990)).
[15] *Koch,* 798 F. Supp at 1536.

Cline *and* her firm be allowed to continue its representation of Defendants.  Defendants'
right to have counsel of their choice is "secondary in importance to preserving the
integrity of the judicial process, maintaining public confidence in the legal system, and
enforcing the ethical standards of professional conduct."[16]

It seems Movants expect the Court to apply a much higher standard in its
assessment of "substantial relationship" than what the law requires.  As discussed above,
clearly established case law allows the Court to *infer* the nature of the information
disclosed in the prior representation, and to consider even the *appearance of the
possibility* that confidential information received during the prior representation would be
relevant to this matter[17] – not <u>in lieu of</u> its determination of a substantial relationship, but
<u>as permitted step</u> in its analysis of substantiality.  Movants also ignore the Court's
obligation to resolve any doubt regarding a substantial relationship in favor of
disqualification.[18]  Therefore, the Court finds it did not bypass its duty to determine
whether Ms. Cline's prior representation of Plaintiff was substantially related to the
present matter.  Movants' request for reconsideration, on that basis, is denied.

### 2.   The Court's Findings of Fact, Based on Counsel's Allegations, Were Not Clearly Erroneous.

Movants not only argue the Court failed to make factual findings of a
"substantially related" nature, but also contend the findings the Court did make were

---

[16] *Id*. at 1530, n.2.
[17] *Chrispens*, 897 P.2d at 112.
[18] *Seifert*, 2016 WL 187994, at *1; *United States v. Wittig*, No. 03-40142-01-JAR, 2005 WL
7139151, at *3 (D. Kan. May 6, 2005); *Koch*, 798 F. Supp. at 1537.

based solely on unsupported allegations.   Movants again ignore the actual evidence presented in this case and what it represents to the Court.   Ms. Cline's declaration (ECF No. 103, Ex. B) indicates she does not remember the details of her representation of Ms. McDonald.   But it also clearly indicates she represented Ms. McDonald.   Neither party disputed the existence of the prior representation, nor did either party dispute what the prior representation involved.   Thus, there was no need for additional evidence to determine the presence of a lawyer-client relationship. Nor was there any need for additional evidence regarding the nature of the prior representation.

Next, the defendants' own statements during the hearing acknowledged there was some connection between Ms. Cline's prior representation and this case with regard to the issue of credibility.   Both the prior case and the instant case squarely involve Ms. McDonald's credibility as a prosecutor.   Regardless of the forum in which Ms. McDonald served as a prosecutor, her character and credibility in that position *was* and *is currently* called into question.

Movants cite to a Tenth Circuit Court of Appeals case, *Holdeman v. Devine*,[19] to support their contention the Court's findings were clearly erroneous because they were unsupported in the record.    But here, the Court's findings *are* supported by information contained in the record.   Through the combination of Defendants' responsive briefing (including Ms. Cline's declaration acknowledging the prior representation), the Court's review of the published *Campbell* case, Plaintiff's motion and reply briefing, and statements of counsel at hearing, it was abundantly clear to the Court the nature of the

---

[19] 572 F.3d 1190, 1192 (10th Cir. 2009).

former representation. Furthermore, as the former client, Plaintiff is not required to divulge the confidential information exchanged with Ms. Cline during the prior representation. "That inquiry would be improper as requiring the very disclosure [KRPC 1.9] is intended to protect."[20]

In addition, for purposes of a disqualification motion, a court may consider what was "alleged in proposed pleadings, memoranda and affidavits, and what has been the subject of discovery."[21] Again, the party seeking disqualification of opposing counsel on ground of former representation "need not reveal the substance of its communication to the lawyer, for this would defeat the purpose of the disqualification." [22] Generally, as was the situation in this case, a "showing of the circumstances and subject of [the prior] consultation will be enough to demonstrate whether the information was confidential."[23] As discussed above,[24] the Court, in its discretion, reasonably inferred what confidential information could have been imparted in Ms. Cline's former representation of Ms. McDonald. No additional evidence was necessary.

Here, in light of Ms. Cline's former representation defending Ms. McDonald in an ethical complaint, where her conduct as a prosecutor and as a lawyer was challenged, it is reasonable for the Court to infer that during the course of that representation, Ms. McDonald discussed many professional and personal details about her life and her work. Regardless of whether Ms. Cline remembers any details at *this* time, it is also reasonable

---

[20] *Chrispens*, 897 P.2d at 112 (citing *Trone,* 621 F.2d at 999).

[21] *Koch*, 798 F. Supp. at 1537.

[22] *Cole v. Ruidoso Mun. Sch..,* 43 F.3d 1373, 1384 n. 8 (10th Cir. 1994).

[23] *Id*.

[24] *See* discussion of allowable inference, *supra* text accompanying notes 9, 11, and 17.

to contemplate the situation where information gained during the prior representation is suddenly recalled by Ms. Cline during trial, and could be relevant to Ms. Cline's current client. Such a situation clearly operates to the detriment of her former client, Ms. McDonald, destroying Ms. McDonald's expectation of loyalty from her former attorney, and creates a conflict whereby Ms. Cline is forced to choose between loyalty to her former client or potentially acting to the detriment of her zealous representation of her current client. This is exactly the type of situation from which the ethical rules are designed to protect.

To the extent Movants argue the Court cited its unsupported findings to controvert Ms. Cline's sworn statements, the Court notes Movants disagree with the Court's finding on page 10 of its Order (ECF No. 110) (stating "although Ms. Cline swore in her affidavit that she recalls no meetings or conversations with Plaintiff during the previous representation, Plaintiff remembers the situation quite differently.") The Court did not discredit Ms. Cline's sworn statement; quite the contrary. The Court takes no issue with Ms. Cline's recall of the prior representation, but merely notes the clearly differing view held by Ms. McDonald. The Court pointed out the differences to demonstrate why the Court resolved any doubt in favor of disqualification, as required by law.[25]

Therefore, the Court finds no clear error in making its factual findings based upon reasonable inferences from a combination of review of the pleadings, Ms. Cline's affidavit, statements of counsel, and review of the published *Campbell* action.

---

[25] *See* discussion of resolution of doubt in favor of disqualification, *supra* text accompanying note 18.

Reconsideration on this basis is denied.

### 3.     Plaintiff's "Waiver"

Ironically, Movants claim the Court erroneously disregarded Ms. McDonald's in-court "waiver" of the imputation of conflict to the law firm.   Movants neglect to disclose their implied rejection of any alleged waiver.   It was only during the January 26, 2016 hearing Plaintiff's counsel announced in open court, in essence to avoid further delay of the trial, that Ms. McDonald was willing to proceed further if Ms. Cline was not involved.   The following colloquy occurred:

> **MR. PETERSON**: Thank you your Honor, I do want to be clear, we do not want a delay and we want to find a way to get this to trial next week so obviously that's not possible if the entire Triplett firm is disqualified.   We have been giving some thought about what we think is a proper solution to this.

> **THE COURT**:  All right.

> **MR. PETERSON**: We think the best solution to the current difficulty is that if Amy Cline is not involved in the case and we go forward . . . [26]

> **. . .**

> **MR. PETERSON**:  . . . we propose with some clarity today - - I think before we just said, well, let's just disqualify the entire firm.  I think the problem with that is the delay and we don't want to have the delay.   Our proposal would be that Ms. Cline not be involved in the defense . . . . [27]

> **. . .**

> **MR. CASEY**: Your Honor, in the end, Ms. McDonald has failed to satisfy her burden of proof. . . . because Ms. McDonald has failed to satisfy her

---

[26] Jan. 26, 2016 Mot. Hr'g Tr. 4:9-19 (ECF No. 119).
[27] Hr'g Tr. 10:2-7 (ECF No. 119).

burden of proof, we would ask that the Court deny the motion.[28]

Also, in describing Ms. McDonald's feelings of betrayal, counsel clearly expressed Ms. McDonald's opposition to waiving any privilege with regard to her prior relationship with Ms. Cline.  During the hearing, Ms. McDonald's counsel stated:

> **MR. PETERSON**: . . . and now she feels betrayed by a lawyer who represented defended her on the [*State v.]Campbell* matter.[29]
>
> **. . .**
>
> **MR. PETERSON**:  Your Honor, part of the problem here is that my client has not waived the attorney client privilege that she has with Ms. Cline and she's not prepared to -- to waive that.[30]

At that time, two things failed to occur:    1) no written waiver was submitted to the Court; and 2) not only did Mr. Casey avoid responding to Plaintiff counsel's "offer," he continued to assert the disqualification of Ms. Cline and the firm would be improper.  *At no time* did Defendants agree to Ms. Cline's withdrawal from their representation.  In fact, Defendants' primary arguments were that no conflict existed, and no substantial relationship could be found between the two matters involving both Ms. McDonald and Ms. Cline.

The Court did not construe Ms. McDonald's reluctance to create a delay in the case, by asking that Ms. Cline not be involved, to be an effective waiver.  KRPC 1.10(c) requires the waiver of such a delicate nature occur via informed consent pursuant to

---

[28] Hr'g Tr. 18:8-9, 16-18 (ECF No. 119).
[29] Hr'g Tr. 5:12-13 (ECF No. 119).
[30] Hr'g Tr. 8:8-11 (ECF No. 119).

KRPC 1.7(b)(4).  Such consent must be confirmed in writing by each affected client.  The comments to KRPC 1.7 make clear "the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing."[31]  Although the Court could reasonably infer informed consent as to Ms. McDonald, mainly because the issue was first presented to the court on her behalf through her counsel, neither Ms. McDonald, nor any of the defendants, presented confirmed consent by each affected client in writing.  In light of the unpredictable circumstances which precipitated Ms. McDonald's so-called waiver, and in light of Defendants' apparent refusal to accept Ms. Cline's withdrawal, the Court is not willing to forego or even relax the requirement that informed consent be in writing.

Without the required written waiver, Movants provided no authority, in the form of case law or otherwise, on which to base its argument that the Court could, on its own initiative, somehow divorce Ms. Cline's conflict from the issue of imputation to the Triplett firm, particularly once the Court determined the existence of a substantial relationship and in light of case law acknowledging the presumption Ms. Cline shared information with her current law partners.[32]  Therefore, the Court finds it did not err by disregarding Plaintiff's so-called offer to waive Ms. Cline's imputed conflict to the firm after Ms. Cline did not voluntarily withdraw and no written waiver or informed consent

---

[31] KRPC 1.7 cmt. 20.
[32] *Smith v. Whatcott*, 757 F.2d 1098, 1101 (10th Cir. 1985) ("The conclusion that two matters are substantially related also gives rise to a second presumption that the attorney shared information with [her] partners, thereby requiring the disqualification of the entire firm.").

by each affected party was presented.   As such, reconsideration on this basis is not warranted.

### 4.      No Unjust Delay

Movants argue the Court was clearly in error by concluding, without any evidence, there was "no harassment or dilatory motive present"[33] in Plaintiff's delay bringing the motion to disqualify.   Movants further contend the Court, without basis, assumed Ms. McDonald was not aware of Ms. Cline's association with Triplett, Woolf & Garretson for the last four years or was misled to believing such as a result of Plaintiff's filings.   Also, citing new evidence[34] which indicates Ms. McDonald knew about Ms. Cline's association with the firm as early as November 2014 when she was deposed, Movants argue Ms. McDonald materially misled the Court as to when she allegedly discovered the supposed conflict of interest and why she delayed in filing her motion.

Taking into consideration Ms. McDonald's arguments during the hearing and Movants' recent sealed filings,[35] it appears all along, although based on the erroneous belief that Ms. Cline could be "screened" from participation in this case, Ms. McDonald had no objection to the Triplett firm continuing on the case so long as Ms. Cline was in no way involved. It was not until Ms. Cline voluntarily interjected herself into the case, three weeks prior to trial, that Ms. McDonald became concerned.

---

[33] Mem. and Order, ECF No. 110, at 13.   *See Koch*, 798 F. Supp. at 1530 (citing *Whatcott*, 757 F.2d at 1100; *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1577 (Fed.Cir.1984)).

[34] Letter from Mary A. McDonald (February 1, 2016) (contents filed *under seal* as ECF No. 116, Ex. A-1).

[35] *Id.*

In its ruling, the Court indicated the "conflict escaped Ms. McDonald's notice until Ms. Cline entered her appearance."[36]  The Court did not, and does not now, construe Ms. McDonald's delay to indicate she was *unaware* of Ms. Cline's association with the firm representing Defendants.  Rather, this Court is of the opinion Ms. McDonald did not believe Ms. Cline's association with the firm mattered as it related to this case, or even required her to notify the Court until Ms. Cline entered her appearance.  It is easy to conclude Ms. McDonald simply forgot about Ms. Cline's association with the Triplett Woolf law firm until Ms. Cline became overtly connected to this case.

Of the factors the Court is to consider when addressing delay in bringing a motion to disqualify,[37] there is no question Ms. McDonald knew of Ms. Cline's association with the Triplett firm 14 months prior to filing her motion to disqualify.  But there is likewise no evidence she was aware Ms. Cline was involved in this case until Ms. Cline entered her appearance three weeks prior to trial.  Certainly, Ms. McDonald's delay in seeking disqualification of Ms. Cline is inconvenient at the very least. But Ms. McDonald's reason for the delay is clearly justified in the eyes of this Court, and Ms. Cline bears some responsibility for being aware of her previous representation of Ms. McDonald and waiting until the eve of trial to enter her appearance.  As such, Plaintiff's motion was timely in light of Ms. Cline's delayed entry of appearance, and although additional information was presented, such information does not rise to the level of new evidence

---

[36] Mem. and Order, ECF No. 110, at 13.
[37] *See Layne Christensen Co., v. Purolite Co*., Case No. 09-2381-JWL-GLR, 2011 WL 1113543 at *17-18  (D. Kan. Mar. 24, 2011) (listing factors to consider, including "when the movant first learned of the alleged conflict, the length of the delay in bringing the motion, and the moving party's reason for the delay").

warranting reconsideration.

### 5.    Sanctions

After the filing of their motion to reconsider, Movants submitted a Supplemental Memorandum[38] arguing the Court, pursuant to Fed. R. Civ. P. 11(c)(3) should:  1) order Ms. McDonald and her lawyers to show cause why their conduct has not violated Rule 11(b);  2) require Ms. McDonald to verify the remaining factual allegations in her Motion to Disqualify;[39] and 3) order Ms. McDonald and/or her lawyers to compensate Defendants and Movants for the unnecessary costs associated with the motion to disqualify, the unnecessary delay in trial, and the costs associated with the motions to reconsider.

For the reasons stated above,[40] this Court sees no reason to sanction either Ms. McDonald or her counsel.  Plaintiff's motion does not state she was not aware of Ms. Cline's affiliation with the Triplett law firm prior to Ms. Cline's entry of appearance; only that the appearance triggered her motion to disqualify.  Perhaps Plaintiff should have been aware that Ms. Cline would not be screened, since Kansas is one of a minority of states which do not allow screening, and therefore Plaintiff's mistaken belief caused her delay in filing the motion. But that mistaken belief does not rise to the level of a harassing and ill intended motive on Ms. McDonald's part, to somehow delay or affect the trial—any more than does Ms. Cline's delay in entering her appearance on the eve of

---

[38] ECF No. 114.
[39] ECF No. 98.
[40] *See* discussion *supra* Part II.B.4.

trial.   Therefore, Movants' request for sanctions is denied.

### C.        Conclusion on Reconsideration

For the reasons stated above, the Court finds it did not bypass its obligation to determine whether Ms. Cline's prior representation was "substantially related" to the present case, and its findings of fact, based on counsel's allegations, were not clearly erroneous.   Additionally, it was not error for the Court to disregard Ms. McDonald's incomplete and unwritten waiver.   Because the Court's finding of no unjust delay was supported by the record, Movants are not entitled to sanctions.   The Motions for Reconsideration of the Order (ECF No. 110) on Motion to Disqualify Counsel (**ECF Nos. 112, 113**) are therefore **DENIED**.

### III.    Motion to Certify Interlocutory Appeal

Movants request, in the event the Court denies their motions for reconsideration, the Court certify this case for immediate appeal.   Both United States Supreme Court and Tenth Circuit Court of Appeals jurisprudence indicate an order disqualifying counsel in a civil case is not a collateral order subject to appeal as a final judgment under 28 U.S.C. § 1291.[41]   Consequently, Movants ask the Court to allow their appeal as an interlocutory decision under 28 U.S.C. § 1292(b).

### A.        Legal Standard for Appeal Pursuant to 28 U.S.C. §1292(b)

Section 1292 discusses the jurisdiction of the U.S. Courts of Appeals over

---

[41] *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440-41 (1985); s*ee Hammond v. City of Junction City, Kansas*, 84 Fed. Appx. 57 (10th Cir. 2003).

interlocutory decisions.  28 U.S.C. § 1292(b) provides, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

An order granting or denying disqualification of counsel is not an order otherwise automatically appealable, such as the denial or issuance of an injunction.[42]  Therefore, the three statutory criteria found in 28 U.S.C. § 1292(b) must be met in order for this action to be certified.  Certification as an interlocutory appeal lies within the sound discretion of the district court.[43]  Once the district court certifies the matter for appeal, the Court of Appeals, in its discretion, may or may not decide to grant a petition for interlocutory appeal.[44]

### B.    Analysis

Case law from the U.S. Supreme Court indicates an aggrieved party may challenge a ruling on disqualification by seeking to have the question certified for interlocutory appeal under 28 U.S.C. § 1292(b).[45]  While some circuit courts of appeal and federal district courts have found a decision on disqualification of counsel to be more properly

---

[42] *See Harper v. Holder*, No. 12-3176-SAC, 2012 WL 5458875, at *1 (D. Kan. Nov. 8, 2012) (citing *Swint v. Chambers County Com'n,* 514 U.S. 35, 45–46 (1995)) (noting "Plaintiff does not seek to appeal one of the few actions for which interlocutory appeals are expressly allowed under § 1292, such as the denial or issuance of an injunction").

[43] *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co., Inc.*, No. 13-2418-JWL, 2015 WL 4463645, at *4 (D. Kan. July 21, 2015) (citing *Swint,* 514 U.S. at 47).

[44] *Id.*

[45] *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 372, n.7, (1981).

considered after the entry of final judgment,[46] the Tenth Circuit Court of Appeals has not squarely addressed the issue.  But this district has certified, and the Tenth Circuit has received, similar cases for preliminary review.

In a 1989 District of Kansas case, *Geisler v. Wyeth Labs*,[47] the district court certified its order, disqualifying plaintiff's attorney and allowing the attorney's law firm to continue representation, for interlocutory appeal under 28 U.S.C. § 1292(b). Defendant Wyeth then filed a petition for interlocutory review in the Tenth Circuit Court of Appeals; however, after a related case was accepted for review and remanded back to the district court for further proceedings,[48] the *Geisler* petition was also remanded prior to consideration by the Tenth Circuit.  In a related vein, the Tenth Circuit accepted interlocutory review of an order of recusal from a district judge in the District of New Mexico.[49]  In none of these cases did the Tenth Circuit suggest the appeals were improper under Section 1292(b).

Although this Court finds its disqualification of Ms. Cline and the law firm to be entirely within its discretion and wholly proper as reasoned above and in its earlier order

---

[46] *See, e.g.*, *Trone v. Smith*, 553 F.2d 1207, 1207 (9th Cir. 1977) (finding that "28 U.S.C. § 1292(b) is not the proper avenue by which to obtain review of the district court's denial of a motion to disqualify an attorney for conflict of interest"); *Apeldyn Corp. v. Samsung Elecs. Co.*, 693 F. Supp. 2d 399 (D. Del. 2010) (finding disqualification order of plaintiff's counsel in patent infringement action would not be certified for immediate appeal); *Multi Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635 (RPP), 2003 WL 22000593 (S.D.N.Y. Aug. 20, 2003) (finding plaintiff distributor was not entitled to file interlocutory appeal on disqualification of counsel); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97 (S.D.N.Y. 1995) (finding certification was not warranted following the issuance of an order disqualifying one law firm from representing alleged infringer).

[47] 716 F. Supp. 520 (D. Kan. 1989)

[48] *Geisler v. Wyeth Labs.*, 934 F.2d 326 (10th Cir. 1990) (unpublished) (citing *Graham v. Wyeth Labs.*, 906 F.2d 1419 (10th Cir.1990)).

[49] *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir. 1980).

(ECF No. 110), the Court also appreciates the practical implications of its decision. Forcing Movants to delay their appeal until after final judgment would be fundamentally unfair. Although the Defendants could proceed to trial after employing and educating substitute counsel, then appeal the disqualification post-trial, the reversal of the disqualification order on appeal would certainly create both considerable delay and additional expense if the case were re-tried on remand. Because "extended and expensive proceedings probably can be avoided by immediate and final decision"[50] on the issue of Defendants' appropriate legal representation, the Court finds this to be just the sort of "extraordinary case"[51] in which an interlocutory appeal is justified. An appellate ruling prior to trial would best serve the dual considerations of fairness to the litigants and judicial economy.[52]

### C.      Conclusion on Interlocutory Appeal

The Court, in its discretion, therefore finds that an interlocutory appeal by Movants is permissible pursuant to 28 U.S.C. § 1292(b). The Tenth Circuit Court of Appeals has not specifically addressed the issue of whether disqualification of defense counsel involves a controlling question of law, and this Court has located no other controlling law regarding the same. Therefore, it stands to reason there is a substantial

---

[50] *Harper v. Holder*, No. 12-3176-SAC, 2012 WL 5458875, at *1 (D. Kan. Nov. 8, 2012) (quoting *State of Utah by and through Utah State Dept. of Health v. Kennecott Corp.,* 14 F.3d 1489, 1495 (10th Cir.), *cert. denied,* 513 U.S. 872 (1994) (citation omitted)).

[51] *Id.*

[52] *Resolution Trust Corp. v. Fleischer*, 871 F. Supp. 1362, 1370 (D. Kan. 1994) (finding the requirements for interlocutory review under 28 U.C.S. § 1292(b) were met, and "a final determination . . . by the circuit court at this time would best serve considerations of judicial economy and fairness to the litigants rather than facing the possible prospect of re-trying such a lengthy case").

ground for difference of opinion and the Tenth Circuit may, in its discretion, address the issue.  An immediate appeal from the disqualification order will materially advance the ultimate termination of the litigation and will promote fundamental fairness.

**IT IS THEREFORE ORDERED** that Movants' Motions to Reconsider the Court's Disqualification Order (**ECF Nos. 112, 113**) are **DENIED**.

**IT IS FURTHER ORDERED** that Movants' Motions for an Immediate Appeal (**ECF No. 112, 113**) are **GRANTED**.  Movants are permitted to take an interlocutory appeal of this order pursuant to 28 U.S.C. § 1292(b), and all proceedings in this case are stayed pending the decision of the Tenth Circuit Court of Appeals.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 31st day of March 2016.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge